UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID J. HEINLEIN, on behalf of | : | CIVIL ACTION NO. |
| himself and all others similarly situated, | : | |
| | : | 3:12-cv-00386 |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| WEST PUBLISHING CORPORATION, | : | |
| | : | |
| Defendant. | : | MAY 25, 2012 |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER**

**ORAL ARGUMENT IS REQUESTED.**

## **TABLE OF CONTENTS**

I.    Preliminary Statement  ...……………………………………………………………  1

II.   Statement of Facts  ………………………………………………………………  2

III.  Argument  …………………………………………………………………………  9

    A.   The first-to-file rule does not apply because the White case is no longer the
        first-filed action and the cases are not duplicative …………………………………  9

    B.   This should remain in the District of Connecticut because Westlaw has not
        presented evidence proving transfer is warranted under 28 U.S.C. § 1404 and
        none of the factors favor transfer to the Southern District of New York  ………….  12

    C.   The class representative has met the precondition to suit under 17 U.S.C. § 411(a)
        and may pursue the claims of unregistered attorney-authors…......……….....….…  22

IV.   Conclusion…………………………………………………………….………………  33

## I.    PRELIMINARY STATEMENT

The defendant, West Publishing Corporation ("Westlaw"), claims that this action should be dismissed or transferred to the Southern District of New York due to the "first filed" case of <u>White v. West Publishing Corp. et al</u>.  Westlaw also seeks a partial dismissal of the Complaint under Rule 12(b)(6) "to the extent that [the Complaint] purports to bring infringement claims on behalf of putative class members that have not registered their copyrights." [Westlaw Memorandum in Support of Motion to Dismiss or Transfer at p. 12].

When Westlaw filed its Motion to Dismiss or Transfer, it appeared that there was significant overlap between the <u>White</u> case and the present case.  For that reason, Heinlein had filed a motion with the Judicial Panel on Multidistrict Litigation seeking to transfer <u>White</u> to Connecticut for consolidation with the present action.  Since the filing of these motions, however, the overlapping portion of the <u>White</u> case has been dismissed with prejudice, and Heinlein has filed a Motion for Class Certification that confirms the narrowness of the class he seeks to represent.  As a result, the <u>White</u> case can longer be considered "duplicative" of the present case, thus defeating any possible applicability of the "first-to-file" rule and eliminating any viable reason for transferring or consolidating the two cases.

With respect to Westlaw's additional request to dismiss Heinlein's Complaint based on Rule 12(b)(6), Westlaw does **not** allege (nor could it) that the plaintiff has failed to state a claim for

relief.  Rather, Westlaw's motion is actually an objection to class certification disguised as a motion to dismiss.  As such, it is not properly raised and should be denied.  Moreover, if this Court does consider the defendant's argument at this time, the fact is that Westlaw is flatly wrong on the substantive law.  Although Westlaw cites cases in which courts have required an individual plaintiff to obtain copyright registration before bringing an infringement action, Westlaw conveniently fails to cite clear Supreme Court authority that allows a registered author, such as David Heinlein, to bring a class action on behalf of individuals who have not registered their works.  One of the main cases establishing this principle is Reed Elsevier v. Muchnick, __ U.S. __, 130 S.Ct. 1237 (2010), a case in which ***Westlaw*** successfully argued that the registration requirement of 17 U.S.C. § 411(a) is a non-jurisdictional prerequisite to suit that need not be satisfied by all members of a class.  As explained in detail in Heinlein's Memorandum in Support of Motion for Class Certification, Muchnick was part of a cluster of multidistrict litigation known as In re Literary Works in Electronic Databases Copyright Litigation, MDL Docket No. 1379, upon which Westlaw's liability in the present case is based.

## II.   <u>STATEMENT OF FACTS</u>

The defendant, West Publishing Corporation, is in the business of selling and marketing online legal research services to legal professionals under the trade name "Westlaw."  By paying subscription fees, Westlaw's subscribers are given access to vast online databases of documents.  These databases contain a variety of legal resources, including original sources of law such as statutes, codes,

regulations, judicial opinions, and legislative materials. The Westlaw databases also contain secondary legal resources such as legal periodicals, treatises, and articles.  In addition to these types of primary and secondary resources, Westlaw has also created a database containing *2.4 million* legal briefs, motions, pleadings, and similar documents that have been created by attorneys and filed with state and federal courts in the United States.  In its advertising materials, Westlaw boasts that it has assembled "[t]he world's largest online legal brief bank for litigators" and that by paying additional subscription fees, Westlaw subscribers can "[f]ind new ideas and approaches" and "[g]ain a competitive advantage with briefs written by experts."

The above-described briefs, motions, pleadings, and other court-filed documents have been copied verbatim and made available to Westlaw subscribers as scanned pdf documents in Adobe Acrobat format as well as electronic word-processing documents in Microsoft Word format.  Despite this widespread copying and commercial republication of these works, Westlaw has not obtained any permission from the authors of the works, nor has Westlaw paid any compensation to these authors.

The plaintiff, David Heinlein, is a member of the bar of the State of Connecticut.  In early 2010, Attorney Heinlein became aware that Westlaw had copied and distributed a court-filed document that he had authored.  Thereafter, Heinlein and his attorneys (collectively, the "Heinlein Group") spent over two years investigating, researching, and analyzing the factual and legal issues relating to Westlaw's widespread copying and commercial distribution of the relevant works.  During that time period, there

were important clarifications in the law relating to class copyright actions, particularly with respect to actions on behalf of authors who have not registered their works with the U.S. Copyright Office.  As a result of the recent clarifications in the law, the following is now apparent: (1) online publishers, such as Westlaw, are liable under the Copyright Act for the display of copyrighted works that are placed in their databases without any specific authorization from the authors; (2) a class action under Rule 23 of the Federal Rules of Civil Procedure is an appropriate mechanism for bringing an infringement action against an online publisher that has amassed large quantities of copyrighted works; and (3) a copyright class action may be brought against an online publisher on behalf of authors who have not obtained registration of their works from the Copyright Office, as long as the proposed class representative has obtained such registration of his or her own work and has therefore satisfied the registration requirement on behalf of the class.[1]

On January 17, 2012, as a prerequisite to initiating this action, Heinlein obtained copyright registration of one of his court-filed authored works.  Shortly thereafter, on February 22, 2012, a similar action was initiated in the District Court for the Southern District of New York, <u>White v. West Publishing Corp.</u>, 1:12-01340-JSR.  The case was filed on behalf of two attorneys, Edward White and Kenneth Elan (collectively, the "White Group"), and was assigned to the Honorable Jed S. Rakoff.

---

[1] All of these legal principles are discussed in detail in Heinlein's Memorandum in Support of Motion for Class Certification dated May 15, 2012.

Unlike in the present case, the White Group alleged claims against not only Westlaw but also against Westlaw's major competitor, LexisNexis.

The Heinlein Group was completely unaware of the existence of the White Group or its plans to initiate the White litigation.  Likewise, it is assumed that the White Group was completely unaware of the existence of the Heinlein Group and its plans to initiate the Heinlein litigation.  The two actions were initiated independently a mere three weeks apart.

At the time the two cases were filed, it seemed that many of the issues raised in <u>White</u> were similar to the issues raised in <u>Heinlein</u>.  Recognizing these similarities, on April 5, 2012, Heinlein filed a motion with the Judicial Panel for Multidistrict Litigation (the "MDL Motion") seeking to transfer <u>White</u> to the District of Connecticut for consolidated or coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.  When the MDL Motion was filed, there had not been any responsive pleadings or responsive motions filed in either <u>White</u> or <u>Heinlein</u>, nor had there been any discovery, scheduling conferences, or scheduling orders, other than general standing orders.  White, Westlaw, and LexisNexis all filed objections to the MDL Motion, arguing that the cases should not be consolidated pursuant to § 1407.[2]  At the same time, however, Westlaw filed its Motion to Dismiss or Transfer in this Court, arguing, among other things, that the cases should be consolidated in the Southern District of New York.

---

[2] In addition to its opposition to multidistrict litigation, LexisNexis also claims that the <u>White</u> case should be severed as between Westlaw and LexisNexis due to alleged differences in the publishing practices of the two defendants.

Subsequent to the filing of the MDL Motion, key differences have emerged between the two cases with regard to the similarity of the proposed classes.  In <u>White</u>, unlike in <u>Heinlein</u>, the complaint specified two distinct subclasses: first, a subclass of registered works represented by plaintiff White, a registered author; and second, a separate subclass of *unregistered* works represented by plaintiff Elan, an *unregistered* author.  [Ex. A (<u>White</u> Complaint) at ¶¶ 4, 5 & 12].  The <u>White</u> complaint made clear that Attorney White filed suit solely as a proposed representative plaintiff for registered works, and Attorney Elan filed suit solely as a proposed representative for unregistered works.  [<u>Id.</u>].

On April 6, 2012, Westlaw and LexisNexis filed motions to dismiss Elan's claims under Rule 12(b)(6) based on his failure to obtain copyright registration prior to filing suit as required by 17 U.S.C. § 411(a).  The plaintiffs filed a memorandum in opposition to the motions to dismiss on April 26, 2012.  In their memorandum, the plaintiffs did not argue that they had properly stated a claim for damages on behalf of unregistered works.  Rather, the plaintiffs argued that they had properly stated a claim for injunctive and declaratory relief because, according to the plaintiffs, 17 U.S.C. § 411(a) only applies to claims for damages.  In the alternative, the plaintiffs also requested leave to amend as an alternative to partial dismissal.

On May 14, 2012, Heinlein filed a Motion for Class Certification.  In the motion, Heinlein defined his proposed class as follows:

> Any attorney, other than a governmental employee, who authored any pleading, motion, brief, or other document that was filed in any state or federal court in the United States and displayed or

made available to Westlaw customers in any Westlaw database at any time on or after March 15, 2009, excluding any such document for which a registration was obtained from the United States Copyright Office (except to the extent that such registration was obtained by a class representative to satisfy a prerequisite to initiate this action).  Any such document described in the preceding sentence shall be considered a "Class Work."

In his Memorandum in Support of Motion for Class Certification, Heinlein explained how he had properly alleged a cause of action on behalf of unregistered authors and how White and Elan had failed to do so, thus leading to certain dismissal of Elan's claims and eliminating any overlap between the proposed classes in the two cases.

On May 16, 2012, Judge Rakoff held oral argument to decide whether to dismiss Elan's claims. After briefly questioning the plaintiffs' counsel, Judge Rakoff ruled from the bench and granted the motion to dismiss "so far as the unregistered attorneys are concerned."  [Ex. B (Transcript of Hearing) at p. 8, lines 17-18).  The Court also denied the plaintiffs' request for leave to amend the complaint.  [Id. at p. 8, line 9].  Judge Rakoff confirmed his bench ruling by issuing a written Dismissal Order stating that "the Court grants the defendants' motion to dismiss the claims of Kenneth Elan and the purported subclass of plaintiffs who have not registered any copyrights and denies plaintiffs' request for leave to amend their Class Action Complaint." [Ex. C (Dismissal Order)].

It is important to note that Judge Rakoff never considered or decided whether a registered class representative may represent unregistered attorney-authors, nor did either party in White address that issue in their briefs or in oral argument.  Rather, the parties' arguments and Judge Rakoff's ruling were

7

based on the very straightforward principle that Elan, an unregistered putative class representative, failed to satisfy the prerequisite to suit under 17 U.S.C. § 411(a).

In light of Judge Rakoff's decision on May 16, 2012, the following issues have become clear: First, the sole remaining plaintiff in <u>White</u> (Edward White) only possesses the legal ability to pursue claims for *registered* works and does *not* have the right to pursue claims relating to unregistered works. By contrast, Heinlein possesses the legal ability to pursue claims of both registered *and* unregistered works, but he seeks only to pursue claims of other authors who have unregistered works, as discussed in detail in Heinlein's Memorandum in Support of Motion for Class Certification. Thus, there is absolutely no overlap between the putative classes in these cases. Second, assuming the <u>White</u> case proceeds as a class action, which is now unlikely considering how few attorney-authors have registered their works, <u>White</u> is not the first-filed action to assert claims of unregistered attorney-authors. The <u>Heinlein</u> case is the *first* and *only* action to validly pursue the claims of unregistered attorney-authors. Third, given that such key differences have emerged between the cases, there is no longer any necessity for them to be heard together. Moreover, it is unclear that the White Group will continue to prosecute the <u>White</u> case at all. In fact, while exiting the courtroom immediately following Judge Rakoff's decision from the bench on May 16, 2012, White's attorney loudly announced to Heinlein's counsel, with Westlaw's attorneys standing nearby, "The case is all yours."

In light of the above, Heinlein withdrew his MDL Motion shortly after the hearing on May 16, 2012, [Ex. D (Withdrawal of Motion to Transfer)], but Westlaw has not withdrawn or modified its Motion to Dismiss or Transfer.

## III.   ARGUMENT

### A.   The first-to-file rule does not apply because the *White* case is no longer considered the first-filed action and the cases are not duplicative.

In Section I of its Memorandum, Westlaw argues that this case should be dismissed or stayed under the first-to-file rule, which applies when there are "duplicative" cases.  Westlaw claims that Heinlein's MDL Motion was an admission that this case was duplicative of the White case.  This is not true.  The MDL Motion only alleged that the two cases were similar, not duplicative.  But more importantly, events subsequent to the filing of Heinlein's MDL Motion and Westlaw's Motion to Dismiss or Transfer have made clear that the two cases are not duplicative, therefore precluding any application of the first-to-file rule as a matter of law.

Under the first-to-file rule, "when a district court encounters a duplicative suit, it should dismiss, stay, or transfer that suit to the jurisdiction of the first-filed suit, absent a finding of special circumstances or a balance of convenience favoring the second suit."  Hilb Rogal & Hobbs Co. v. MacGinnitie, No. 04-cv-1541, 2005 WL 441509, at *4 (D. Conn. Feb. 14, 2005) (Hall, J.).   Application of the rule, however, depends upon a thorough, threshold analysis that the actions are duplicative.  "Courts should only apply the [first-to-file] rule, if in fact the suits are duplicative, that is, if both cases

have identical or substantially similar parties and claims." <u>Timberland Machines, and Irrigation, Inc. v. Echo, Inc.</u>, 2009 WL 996044, at *2 (D. Conn. Apr. 13, 2009) (Hall, J.) (quoting <u>Veritas-Scalable Inv. Prods. Fund, LLC v. Fb Foods, Inc.</u>, 238 F.R.D. 339, 343 (D. Conn. 2006)).  "The Second Circuit has cautioned that 'a court must be careful, when dismissing a second suit between the same parties as duplicative, not to be swayed by a rough resemblance between the two suits without assuring itself that . . . the claims asserted in both suits are the same.'" <u>Naula v. Rite Aid of New York</u>, 2010 WL 2399364, at *2 (S.D.N.Y.) (quoting <u>Curtis v. Citibank, N.A.</u>, 226 F.3d 133, 136 (2000)); <u>see also</u> <u>Alden Corp. v. Eazypower Corp.</u>, 294 F. Supp. 2d 233, 235 (D. Conn. 2003) (Hall, J.) ("In determining if the first-filed rule applies, the court must carefully consider whether in fact the suits are duplicative").

In order to conclude that an action is duplicative, the court must find that there is no significant difference between the "claims, parties and available relief."  <u>See</u> <u>Oleg Cassini, Inc. v. Serta, Inc.</u>, No. 11 Civ. 8751(PAE), 2012 WL 844284, at *3 (S.D.N.Y. Mar. 13, 2012).   In considering whether the parties of two class actions are duplicative, the first-to-file rule applies only where it is "clear that the putative classes 'are composed of the same members, and are organized to vindicate the same rights.'" <u>In re MF Global Holdings, Ltd.</u>, 464 B.R. 619, 624 (Bankr. S.D.N.Y. 2012) (<u>quoting</u> <u>James v. AT & T Corp.</u>, 334 F.Supp.2d 410, 411 (S.D.N.Y. 2004)).  Even though the "named parties need not be identical," they must "represent the same interests."  <u>See</u> <u>Oleg Cassini</u>, 2012 WL 844284 at *3.

In light of Judge Rakoff's recent decision, the first-to-file rule is not implicated by the <u>Heinlein</u> case. Assuming the <u>White</u> case proceeds as a class action (which is unlikely), the plaintiffs cannot represent the claims of unregistered authors. The <u>Heinlein</u> case is the *first and only* action to validly pursue the claims of such authors. Because White may only represent the claims of registered authors, and Heinlein has limited his representation to the claims of unregistered authors, the <u>Heinlein</u> case is the only action pending on behalf of unregistered authors, so the first-to-file rule does not apply.

Furthermore, even if the <u>White</u> case is still considered the first-filed action, this Court should not apply the first-to-file rule because the parties in the <u>Heinlein</u> and <u>White</u> cases are not duplicative. Whatever similarity exists between the claims, any similarity between the *parties* was eliminated by Judge Rakoff's decision. The putative class members in the <u>Heinlein</u> case are only those unregistered attorney-authors with claims against Westlaw. Following Judge Rakoff's decision, the only possible putative class members in the <u>White</u> case are those *registered* attorney-authors with claims against Westlaw and Lexis. It is also highly unlikely that the <u>White</u> case will be able to satisfy the numerosity requirement necessary to maintain a class action for registered attorneys given how few attorneys have registered their works. [See Westlaw's Memo at p. 6, n. 2]. Recognizing this key difference that developed between the cases, Heinlein withdrew his MDL Motion shortly after Judge Rakoff's decision.

[Ex. D (Withdrawal of Motion to Transfer)].  Accordingly, given that the two cases are not duplicative, this Court has no authority to dismiss or stay the Heinlein case pursuant to the first-to-file rule.[3]

      **B.**    **This case should remain in the District of Connecticut because Westlaw has not presented evidence proving that transfer is warranted under 28 U.S.C. § 1404 and none of the factors favor transfer to the Southern District of New York.**

     In Section II of its Memorandum, Westlaw appears to argue that this case should be transferred to the Southern District of New York under 17 U.S.C. § 1404.  Yet in support of this contention, Westlaw makes arguments and cites cases that discuss the "balance of convenience" exception to the first-to-file rule.  [Westlaw Memo at p. 8-10].  By confusing this first-to-file exception with the standards for transfer under § 1404, Westlaw's argument incorrectly suggests that it is Heinlein's burden to prove that transfer to the Southern District of New York is inappropriate. As discussed below, it is Westlaw's burden to establish that transfer is appropriate under § 1404 – a burden that Westlaw has failed to satisfy.[4]

---

[3] Transfer is another possible remedy under the first-to-file rule, but Westlaw has only requested a dismissal or stay under this rule. [Westlaw Memo at pp. 5, 14].  Westlaw's request for a transfer of this case is based solely on 28 U.S.C. § 1404, [Westlaw Memo at p. 8, 11, 14], which will be discussed in Section III.B below.  Nevertheless, Heinlein notes that transfer is similarly unavailable under the first-to-file rule because the two actions are not duplicative, as discussed above.

[4] Under the first-to-file rule, if a court finds that two actions are duplicative, the rule applies unless the second-filed plaintiff can establish that special circumstances exist or "the balance of convenience favors the second filed action." Timberland Machines, and Irrigation, Inc. v. Echo, Inc., 2009 WL 996044, at *2 (D. Conn. Apr. 13, 2009) (Hall, J.).  In analyzing whether the balance of convenience favors the second-filed action, courts consider essentially the same factors as those analyzed under

"In determining whether a transfer of venue pursuant to 28 U.S.C. § 1404(a) is appropriate, district courts engage in a two-part inquiry, asking: (1) whether an action might have been brought in the proposed transferee forum, and, if so, (2) whether the transfer promotes convenience and justice." Wilson v. DirectBuy, Inc., 821 F. Supp. 2d 510, 515 (D. Conn. 2011) (Hall, J.).  With respect to part one of the inquiry, this action theoretically *might have been* brought in the Southern District of New York, but there is little connection with that district, as discussed below.  Therefore, if Heinlein had brought his action in New York (where neither he nor Westlaw is located), the case would have been subject to likely transfer from that district under § 1404.

Turning to the second part of the §1404 inquiry, courts consider the following factors to determine whether a transfer promotes convenience and justice: "(1) the weight accorded the plaintiff's choice of forum; (2) the locus of operative facts; (3) the convenience of the witnesses; (4) the availability of process to compel the attendance of unwilling witnesses; (5) the convenience of the parties; (6) the location of relevant documents and the relative ease of access to sources of proof; (7) the relative means of the parties; (8) the district court's familiarity with governing law; and (9) trial

---

§ 1404; but there is an important difference between the two doctrines: Under the first-to-file rule, the burden is on the second-filed plaintiff to "establish[] that the balance of convenience favors the second filed action" to avoid the application of the rule to a duplicative action.  Boehringer Ingelheim Vetmedica, Inc. v. Merial, Ltd., 2010 WL 174078, at *15 (D. Conn. 2010).  In contrast, under § 1404, the party seeking transfer has the burden of proving that convenience and justice favor transfer.  In the present case, the "balance of convenience" factor under the first-to-file rule is irrelevant because the White case is neither "duplicative" nor "first-filed," as discussed in Section III.A above.

efficiency and the interest of justice." Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C., 294 F. Supp. 2d 218, 219-220 (D. Conn. 2003) (Hall, J.).

In analyzing the foregoing factors, "[t]he party moving for the transfer has the burden of establishing that its choice of venue is more appropriate."  Hajela v. ING Groep, N.V., 582 F. Supp. 2d 227, 238 (D. Conn. 2008) (Hall, J.).  The court must find that the defendant has established "the propriety of transfer by a clear and convincing showing."  Zinky Electronics, LLC v. Victoria Amplifier Co., 2009 WL 2151178, at *1 (D. Conn. June 24, 2009) (Hall, J.).  Because it is the plaintiff's right to choose the forum, "[t]he burden is upon the defendant to make 'a clear-cut showing ... that convenience and justice for all parties *demands* that the litigation proceed elsewhere.'" Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C., 294 F. Supp. 2d 218, 219 (D. Conn. 2003) (Hall, J.) (quoting United States Barite Corp. v. M.V. Haris, 534 F. Supp. 328, 331 (S.D.N.Y. 1982)) (emphasis added).

Westlaw's attorneys have not presented *any* evidence showing that transfer is necessary for the convenience of their client.  Rather, Westlaw's Memorandum contains only a passing discussion of the relevant factors and relies almost exclusively on White, which is now far less relevant to this case than when Westlaw filed its motion.  Westlaw's argument for transfer is actually a first-to-file argument disguised as a § 1404 argument.  Indeed, Westlaw has not even begun to show that transfer is proper under the applicable factors of § 1404, each of which is discussed below.

14

### 1.      Plaintiff's Choice of Forum

Generally, "the plaintiff's choice of forum is given great weight." Rindfleisch v. Gentiva Health Systems, Inc., 752 F. Supp. 2d 246, 251 (E.D.N.Y. 2010) (quotations omitted).  However, courts may give this factor less weight where "(1) the operative facts have little or no connection with the forum chosen by the plaintiff, or (2) a plaintiff chooses a forum that is not his residence." Id.  The plaintiff's choice of forum is also "a less significant consideration in a (here, putative) class action than in an individual action." Id.

Westlaw asserts that these principles dictate that "virtually no weight" be given to Heinlein's choice of forum.  This assertion is nonsensical.  Heinlein has chosen to bring this action in the District of Connecticut because it is where he resides; it is where he wrote the Registered Work; and it is where he discovered Westlaw's infringement.  This is hardly "little or no connection with the forum." Furthermore, simply because this case is a class action does not mean that Heinlein's choice of forum is irrelevant.  Depending on the specifics of the class action, this factor will be weighed differently.   For instance, in Wilson v. DirectBuy, Inc., 821 F. Supp. 2d 510, 516 (D. Conn. 2011) (Hall, J.), even though only three of the ten named plaintiffs and a small percentage of the putative class members lived in Connecticut, this Court found that "the plaintiff's choice of forum was still entitled to some weight," even if it was much less than in an individual action.

In the present case, there are no named plaintiffs who live outside of Connecticut. Heinlein's choice to bring this action in Connecticut was not an attempt at forum-shopping or any other misguided procedural design; rather, Heinlein made a genuine and logical decision that he would serve the members of the putative class most efficiently from where he resides. Westlaw also has offered no evidence that a smaller percentage of the putative class members reside in Connecticut relative to other states. Accordingly, even though this case is a class action, Heinlein's choice of forum weighs against transfer.

### 2. Locus of Operative Facts

"To determine the locus of operative facts, courts look to the site of events from which the claim arises." Zinky Electronics, LLC v. Victoria Amplifier Co., 2009 WL 2151178, at *8 (D. Conn. June 24, 2009) (Hall, J.) (quotations omitted). Here, the locus of operative fact has little or no connection to the Southern District of New York. Although Westlaw operates nationally, it is headquartered in Minnesota. Moreover, Heinlein's claims originated in Connecticut. Westlaw asserts that this factor "is similarly unhelpful to Heinlein." [Westlaw Memo at p. 9]. Yet it is not Heinlein's burden to prove that the transfer is inappropriate. As the moving party, Westlaw bears the burden of proving that the transfer is appropriate. Westlaw has failed to satisfy its burden as to this factor. Given that Connecticut has a stronger connection to the locus of operative facts than New York, this factor weighs against transfer.

### 3.     Convenience of the Witnesses

"The convenience of the witnesses is generally considered the most important of the factors a court considers in deciding whether to transfer a case." Jones v. Walgreen Co., 463 F. Supp. 2d 267, 274 (D. Conn. 2006). This Court has held that "[p]arties seeking consideration of this factor must specify the identity of key witnesses and the nature of their likely testimony, and support these statements with affidavits." Wilson v. DirectBuy, Inc., 821 F. Supp. 2d at 517. Because Westlaw did not identify *any* key witnesses or provide *any* affidavits supporting the nature of the witnesses' likely testimony, the Court should give Westlaw's arguments no weight in considering this factor.

Heinlein's key witness is David Heinlein, who is located in Connecticut. At this point, Heinlein does not believe that any of his witnesses will be located outside of Connecticut. Westlaw has acknowledged that its witnesses are located in Minnesota. Thus, travel for Westlaw's witnesses will be necessary to either New York or Connecticut, neither of which is strikingly more or less convenient. Because there is no marked difference in traveling to either state, and because one of the witnesses in this case resides in Connecticut (while no identified witnesses reside in New York), Westlaw has failed to satisfy its burden as to this factor.

### 4.     Availability of Process to Compel the Attendance of Unwilling Witnesses

Heinlein knows of no unwilling witnesses, nor has Westlaw identified any such witnesses.

### 5.      Convenience of the Parties

"Transfer should not merely 'shift the burden of inconvenience from one party to the other.'"

Wilson v. DirectBuy, Inc., 821 F. Supp. 2d at 517 (quoting Pitney Bowes v. National Presort, 33 F.

Supp. 2d 130, 132 (D. Conn. 1998)).  Similar to the above discussion regarding the convenience of

witnesses, the most convenient place for the parties to litigate this case is Connecticut, not New York.

Westlaw has failed to show otherwise.  Because there is no great inconvenience to Westlaw in defending

the case in Connecticut instead of New York, and Connecticut is the most convenient forum for

Heinlein, this factor weighs against transfer.

### 6.      Location of Relevant Documents and Relative Ease of Access to Sources of Proof

"Although the location of relevant documents is entitled to some weight, modern photocopying

technology and electronic storage deprive this issue of practical or legal weight."  Charter Oak Fire Ins.

Co. v. Broan-Nutone, 294 F. Supp. 2d at 221.  Heinlein agrees with Westlaw that this factor is of little

importance in this case given modern technology.  [Westlaw Memo at p. 10].  Nevertheless, Heinlein

strongly disagrees with Westlaw's conclusion that because the "only documents likely to be located in

Connecticut are Heinlein's own," this factor favors transfer. [Id.].  Westlaw has provided no evidence

that any documents are located in New York to justify a transfer.  Again, Westlaw overlooks the fact

that it bears the burden of proving that these factors justify transfer.  It is immaterial how many

documents are located in Connecticut when Westlaw has offered no evidence that there are any documents or sources of proof located in New York.  Accordingly, this factor weighs against transfer.

### 7.    Relative Means of the Parties

"When a court is assessing a motion to transfer pursuant to section 1404(a), the relative financial hardship on the litigants and their respective abilities to prosecute or defend an action in a particular forum are legitimate factors to consider."  <u>MAK Marketing, Inc. v. Kalapos</u>, 620 F. Supp. 2d 295, 311 (D. Conn. 2009) (Hall, J.).  Westlaw argues that this factor is "largely irrelevant" because Heinlein has admitted in his MDL Motion that transfer to New York "would not cause any great hardship."  [Westlaw Memo at p. 10].  The context of this statement, of course, was that Heinlein sought pretrial centralization in *Connecticut* due to circumstances that no longer exist.  It was true then, and it is still true, that litigating this case in New York would not cause any *great hardship* to Heinlein. But as also stated in Heinlein's now-moot MDL Motion, litigating this case in Connecticut would not cause any hardship to Westlaw.  For purposes of considering transfer under § 1404 (as opposed to MDL centralization under § 1407), a court must look at the *relative* impact on the parties.

Contrary to Westlaw's characterization of this factor, the means of the parties differ greatly and weigh against transfer.  Heinlein is an individual who is prosecuting this action in addition to fulfilling his daily career obligations.  Heinlein should not be forced to sacrifice his time and resources to travel to New York for the duration of this case, which could last for years, when Westlaw would suffer no undue

burden or hardship by defending this action in Connecticut.  In <u>Hawley v. Accor North America, Inc.</u>, 552 F. Supp. 2d 256, 261 (D. Conn. 2008) (Hall, J.), this Court stated that this factor "weighs heavily against transfer . . . [w]here plaintiffs are individuals bringing suit against a large corporation which does business in their home state."  Westlaw is a large corporation with multiple offices operated by its parent company, Thomson Reuters, in Connecticut.  Westlaw has far more resources to travel the distance to Connecticut than Heinlein has to travel to New York.  Despite the fact that Westlaw bears the burden of producing evidence as to this factor, Westlaw has failed to present *any* evidence regarding this issue.  Accordingly, this factor weighs against transfer.

### 8.    District Court's Familiarity with Governing Law

"Federal courts are presumed to be equally familiar with federal law." <u>Wilson v. DirectBuy, Inc.</u>, 821 F. Supp. 2d at 519.  There is no reason to believe that either Judge Hall or Judge Rakoff is more competent to handle a copyright infringement class action where no state claims are at issue.  Although Westlaw may claim that given the recent hearing in <u>White</u>, Judge Rakoff now has experience in dealing with this particular type of copyright claim, he is no more familiar with Heinlein's claim and arguments for representing unregistered attorney-authors than Judge Hall, nor has he even remotely been presented with the actual merits of the relevant infringement issues.  White and Elan never pursued a class action by a registered class representative on behalf of unregistered attorney-authors, nor did they reach the merits of their substantive legal claims.  Although Judge Rakoff considered a partial motion to dismiss,

the decision to grant the motion from the bench was not a difficult one, as indicated by the short oral argument and the immediate bench ruling.  Thus, Judge Rakoff has no advantage over Judge Hall in hearing this case.

## 9.    Trial Efficiency and the Interest of Justice

"Finally, the court must consider trial efficiency and the interests of justice." Zinky Electronics, LLC v. Victoria Amplifier Co., 2009 WL 2151178, at *8 (D. Conn. June 24, 2009) (Hall, J.). In its Memorandum, Westlaw relies heavily on the argument that the White case was the first-filed and more procedurally advanced action and that Heinlein's case is duplicative of the efforts in the White case. [Westlaw Memo at p. 11].  Given the recent developments in both cases, this argument is completely unsupportable.  On May 14, 2012, Heinlein filed a Motion for Class Certification.  On the same day, the parties filed their joint Rule 26(f) Report.  Although Westlaw consented to a very aggressive scheduling order in the White case, Westlaw would not agree to similar scheduling deadlines in this case. Nevertheless, Heinlein expects that a status conference with Judge Hall on June 12, 2012 will resolve these differences and will result in a scheduling order.  Even without such an order, the Heinlein case is now *more* procedurally advanced than the White case because Heinlein has filed a comprehensive Motion for Class Certification.  No such motion has been filed in White, and it is now unlikely that such a motion will be filed at all.  Thus, transferring the Heinlein case to New York to be heard with White would not promote trial efficiency.  On the contrary, transfer is much more likely to jeopardize any

attempts at efficiency, given that it is unclear whether the <u>White</u> case will move forward as a class action.

Even more importantly, Westlaw's entire argument for transfer is based on the premise that the two cases are "duplicative," thus making it inappropriate to allow both cases to proceed in different districts at the same time.  At the time Westlaw filed its Motion to Dismiss, there was some merit to this assertion.  But in light of the dismissal order in <u>White</u> and the Motion for Class Certification in <u>Heinlein</u>, neither the claims nor the parties are duplicative, as discussed in detail in Section III.A above.  Given these new developments, this factor weighs against transfer.

Considering each of the nine relevant factors, it is apparent that Westlaw has fallen well short of satisfying its burden to make a "clear and convincing showing" that this case should be transferred to the Southern District of New York.

**C.     As the proposed class representative, Heinlein has met the precondition to suit under 17 U.S.C. § 411(a) and may pursue the claims of unregistered attorney-authors.**

Westlaw argues that if the Court does not dismiss the action under the first-to-file rule, the Complaint should be dismissed as to the putative class members' unregistered works.  This challenge to the definition of the class is not appropriate on a motion to dismiss.  Furthermore, Westlaw's argument is simply wrong:  A registered class representative like Heinlein possesses the authority to represent the

claims of unregistered authors and to pursue their copyright claims under Rule 23 of the Federal Rules of Civil Procedure.

Under Rule 12(b)(6), the court will dismiss an action when the plaintiff fails to state a claim upon which relief can be granted. Heinlein, the named plaintiff in this class action, registered his work with the U.S. Copyright Office on January 17, 2012. Therefore, he has satisfied the precondition to suit contained in 17 U.S.C. § 411(a). Westlaw does not dispute this and does not argue that Heinlein has failed to state a claim. Instead, Westlaw asserts the following: "The Complaint fails to limit the class to those that have obtained valid copyright registrations. Accordingly, the Complaint should be dismissed to the extent it purports to bring claims on behalf of putative class members that have not registered their copyrights." [Westlaw Memo at p. 13]. Because Westlaw is claiming that the putative class – and not Heinlein individually – has failed to state a claim, Westlaw's argument is actually one that goes to the definition of the class, which is an issue for class certification proceedings under Rule 23. As class representative, Heinlein has stated a valid claim of copyright infringement against Westlaw on behalf of a putative class of similarly situated individuals, which is all that Heinlein must do to survive Westlaw's Motion to Dismiss. The question of who is "similarly situated" is a question for class certification, not a question for whether the plaintiff has stated a claim.

Even if the Court treats Westlaw's class-definition challenge as a Rule 12(b)(6) challenge, Westlaw is simply wrong that Heinlein is prohibited from pursuing a class action under Rule 23 on

behalf of class members who have not registered their works.  As discussed in detail in Heinlein's Memorandum in Support of Class Certification, and as restated below, there is Supreme Court precedent regarding the fulfillment of a non-jurisdictional prerequisite to suit (such as registration of a copyright) by a class representative on behalf of a proposed class.  The law has now become clear that a class representative who registers his or her work may pursue a class action under Rule 23 and 17 U.S.C. § 411(a) on behalf of authors who have not registered their works.

The current version of Rule 23 owes itself significantly to the 1966 Amendments of the Federal Rules, which, among other things, created "criteria that must be met for a class to be certified" and also "permitt[ed] judgments for money that would bind all class members save those who opt out."  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 592 (1997).  Despite clarity in many areas, neither the 1966 revisions nor any subsequent revisions specifically address whether, and to what extent, a class representative may satisfy procedural and substantive litigation requirements on behalf of unnamed members of the class.  This issue was first addressed by the Supreme Court in American Pipe & Const. Co. v. Utah, 414 U.S. 538  (1974), a case that considered the interplay between Rule 23 and statutes of limitation.  There is nothing in Rule 23 or elsewhere that addresses whether the filing of a proposed class action prior to the expiration of the applicable statute of limitation relieves members of the class from individually satisfying the statute if it expires prior to a class certification order.  Since a class does not truly exist until certified by the court, one might argue that the mere filing of a proposed class action

24

is insufficient to fulfill this precondition on behalf of an entire class.  Nevertheless, requiring members of a proposed class to file their own lawsuits or join as named plaintiffs would thwart the purpose of a class action.  Id. at 551.  Accordingly, the Supreme Court held that "the filing of a timely class action complaint commences the action for all members of the class as subsequently determined."  Id. at 550.

Following American Pipe, the Supreme Court has addressed other procedural requirements that may be satisfied by a class representative on behalf of an entire class.  In Albemarle Paper Co. v. Moody, 422 U.S. 405 (1975), the Supreme Court addressed the requirement of filing a discrimination charge with the EEOC prior to initiating a Title VII action in court.  See 42 U.S.C. § 2000e-5.  In a class action alleging discrimination, the Court held that the filing of a timely charge with the EEOC by a single aggrieved individual was sufficient to satisfy the precondition to suit on behalf of the entire class, thus permitting the recovery of backpay not only for the class representative but for all unnamed members of the class who did not file a charge with the EEOC.  422 U.S. at 414 n.8.  The Court later reaffirmed this holding in Franks v. Bowman Transportation Co., 424 U.S. 747, 771 (1976).

One day after the decision in Albemarle, the Supreme Court decided another case involving administrative preconditions to class actions.  In Weinberger v. Salfi, 422 U.S. 749 (1975), the plaintiffs filed a class action challenging the constitutionality of a federal statute that prohibited the receipt of Social Security insurance benefits by surviving spouses and step-children in certain situations.  The Court analyzed 42 U.S.C. § 405(g), which authorized judicial review of final administrative decisions by

the Department of Health, Education and Welfare (now the Department of Health and Human Services).
In Salfi, the class representatives timely sought and obtained the requisite administrative decision.  They
then filed suit in district court on behalf of themselves as well as other similarly situated class members
who had not availed themselves of the required administrative procedures.   The Court concluded that
seeking and obtaining an administrative decision were "central to the requisite grant of subject-matter
jurisdiction – the statute empowers district courts to review a particular type of decision by the
Secretary, that type being those which are 'final' and 'made after a hearing.'" Id. at 764.  The Court
therefore held that the district court had jurisdiction over the claims of the named plaintiffs but not the
unnamed class members who had failed to satisfy the administrative prerequisite.

      In Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982), the Supreme Court brought together
the various strands of American Pipe, Albemarle, Salfi, and Franks by specifically articulating that the
reason for allowing the class representatives in Albemarle and Franks to satisfy an administrative
precondition to suit on behalf of an entire class was because the applicable statutory precondition was
non-jurisdictional.  As explained by the Court: "If the timely-filing requirement were to limit the
jurisdiction of the District Court to those claimants who have filed timely charges with the EEOC, the
District Courts in Franks and Albemarle would have been without jurisdiction to adjudicate the claims
of those who had not filed as well as without jurisdiction to award them seniority.  We did not so hold."
Zipes, 455 U.S. at 397.

As a result of <u>American Pipe</u>, <u>Albemarle</u>, <u>Salfi</u>, <u>Franks</u>, and <u>Zipes</u>, the law became clear regarding the ability of a class representative to satisfy preconditions to suit on behalf of unnamed members of a class:  If the precondition is jurisdictional, then each class member must separately satisfy the precondition; but if the precondition is *non*-jurisdictional, then the class representative's satisfaction of the precondition is sufficient to litigate the claims of all class members.

In <u>Francis v. City of New York</u>, 235 F.3d 763 (2d Cir. 2000), the Second Circuit adopted a broad reading of the <u>Zipes</u> holding: "Zipes' reasoning strongly suggests that the non-jurisdictional status of timeliness requirements reflects the rule, not the exception."  <u>Id.</u> at 767.  The <u>Francis</u> Court described the <u>Zipes</u> rule as "the 'single filing rule,' which waives exhaustion requirements for plaintiffs whose claims arise out of the same discriminatory acts as those alleged by a complainant who properly exhausted his administrative remedies."  <u>Id.</u> at 767.

In <u>Menominee Indian Tribe of Wisconsin v. U.S.</u>, 614 F.3d 519 (C.A.D.C. 2010), the D.C. Circuit discussed <u>Albemarle</u> and <u>American Pipe</u>, explaining that jurisdictional preconditions to suit must be satisfied by each member of the class, whereas non-jurisdictional preconditions, such as the exhaustion of non-jurisdictional administrative remedies, need only be satisfied by one member of the class.

> A party generally must exhaust administrative remedies before seeking relief in federal court. <u>See</u> <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144–45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); <u>see also</u> <u>Myers v. Bethlehem Shipbuilding Corp.</u>, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938). That rule "applies to class actions," in which courts typically require "exhaustion by at

least one member of the class." <u>Phillips v. Klassen</u>, 502 F.2d 362, 369 (D.C.Cir.1974); <u>see, e.g.,</u> <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). Where exhaustion is a jurisdictional requirement, however, every class member must exhaust its administrative remedies. <u>Blackmon–Malloy v. U.S. Capitol Police Bd.</u>, 575 F.3d 699, 704–05 (D.C. Cir. 2009); <u>see, e.g.,</u> <u>Weinberger v. Salfi</u>, 422 U.S. 749, 764, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

614 F.3d at 526.

In <u>Reed Elsevier v. Muchnick</u>, __ U.S. __, 130 S.Ct. 1237 (2010), the Supreme Court was faced with the specific question of whether obtaining a copyright registration under 17 U.S.C. § 411(a) is a jurisdictional prerequisite to bringing an infringement action in district court.  Relying specifically on <u>Zipes</u>, the Supreme Court said no.  130 S.Ct. at 1246-47.  As in <u>Zipes</u>, the plaintiff in <u>Muchnick</u> sought to represent a class of unnamed plaintiffs, the majority of whom had not satisfied the non-jurisdictional precondition to suit.  As in <u>Zipes</u>, the consequence of the Court's characterization of the applicable precondition was clear and significant:  By holding that the act of obtaining copyright registration from the Copyright Office is the procedural equivalent of filing a discrimination charge with the EEOC, <u>Muchnick</u> thereby confirmed that a plaintiff who obtains copyright registration under 17 U.S.C. § 411(a) can pursue claims on behalf of class members who have not themselves obtained registration.

The Supreme Court's decision in <u>Muchnick</u> reversed the Second Circuit's decision in the case of <u>In re Literary Works in Electronic Databases Litigation</u>, 509 F.3d 116 (2d Cir. 2007).  Yet even in the decision that was reversed, the Second Circuit recognized the applicable jurisdictional/non-jurisdictional dichotomy that had been established by the Supreme Court for determining whether all class members

are required to satisfy a statutory precondition to suit.  In <u>Literary Works</u>, the Second Circuit opined that the registration requirement of § 411(a) was more like the requirement in <u>Salfi</u> and therefore was a jurisdictional requirement that needed to be satisfied by each individual class member.  <u>Literary Works</u>, 509 F.3d at 125-26.  In overturning the Second Circuit's decision, the Supreme Court concluded that § 411(a) was not like the applicable requirement in <u>Salfi</u> and instead was like the non-jurisdictional requirement in <u>Zipes</u>.

The great irony of the defendant's argument in the present case is that Westlaw was a party in <u>Muchnick</u> and successfully argued that the precondition to suit under § 411(a) was *not* jurisdictional.  In that case, freelance authors brought a class action against Westlaw and other online publishers based on the unauthorized online publication of copyrighted articles.  In response to the suit, Westlaw and its co-defendants ultimately entered into a settlement agreement that involved payment to registered *and* unregistered authors.  The question in that case was whether the district court had jurisdiction to approve a settlement of infringement claims as to works that had not been registered.  All parties – including Westlaw – argued that their settlement agreement should be approved because § 411(a) was non-jurisdictional.  Because of the Supreme Court's application of <u>Zipes</u> to § 411(a) in <u>Muchnick</u>, Westlaw's victory had two main consequences with respect to the adjudication of copyright claims by unregistered authors:  First, a finding that § 411(a) was non-jurisdictional meant that the requirement of copyright registration was waivable, thus allowing Westlaw and the other online publishers to enter into a

settlement that included, among other things, releases from unregistered authors for future infringing uses.  Second, the Supreme Court's application of <u>Zipes</u> to § 411(a) meant that in a copyright class action, the requirement of registering a work need only be satisfied by the named plaintiff, who may then represent the claims of unregistered authors.

As argued by ***Westlaw*** in advocating for the adjudication of unregistered works in a copyright class action:

> [I]f a plaintiff brings a single claim based on a registered copyright, the district court acquires jurisdiction over any and all related copyright claims, even if those other claims arise from unregistered copyrights. … "§ 411(a) is merely the plaintiff's ticket to court," that once stamped, allows him to raise all sorts of claims arising from unregistered copyrights.

<u>In re Literary Works in Electronic Databases Copyright Litigation</u>, 509 F.3d 116, 123 (2d Cir. 2007) (quoting the brief of Westlaw and its co-defendants).

No truer words have ever been spoken by Westlaw.  Indeed, it makes perfect sense that § 411(a) would be considered a non-jurisdictional requirement that need only be satisfied by a named plaintiff on behalf of the class.  Unlike the statute considered in <u>Salfi</u>, § 411(a) is not a statute that creates initial jurisdiction in an administrative tribunal and then creates appellate jurisdiction in the district court as a reviewer of an administrative decision.  Rather, by the statute's very terms, the sole result of registration is the ability to bring an infringement directly in district court.  Infringement actions do not seek review of any administrative agency decision, nor does the administrative agency become a party to the case.  In fact, in comparison to the investigative and adjudicative authority that is

triggered by the filing of a discrimination charge with the EEOC under 42 U.S.C. § 2000e-5, the role of the Copyright Office in responding to an application for registration under § 411(a) is ministerial in nature. The role is nothing more than "punching a ticket to court," to use Westlaw's terminology. For this reason, § 411(a) presents an even more compelling and intuitive case for allowing the representative fulfillment of a precondition to suit, thus making the Supreme Court's decision in <u>Muchnick</u> unsurprising.

In light of these principles, it is quite clear that Heinlein possesses the legal ability to pursue claims of attorney-authors with unregistered works, as authorized by <u>Muchnick</u> and <u>Zipes</u>. In its Memorandum, Westlaw argues, rather simplistically, that the claims of unregistered attorney-authors must be dismissed because § 411(a) prohibits a plaintiff from bringing any infringement action – regardless of the relief sought – unless and until registration has been obtained. Heinlein does not dispute this unambiguous statutory principle. But the fact is that Heinlein is the only named plaintiff, and he has satisfied this prerequisite. Conveniently, and quite disingenuously, Westlaw fails to inform this Court of the Supreme Court's holding in <u>Zipes</u> and the Supreme Court's application of <u>Zipes</u> to § 411(a) in <u>Muchnick</u> – a holding that Westlaw fought hard to obtain.

Westlaw might attempt to analogize the present case to <u>White</u>, where the claims of unregistered authors were recently dismissed. But as discussed above, the comparison on this point is without basis. The <u>White</u> complaint failed where Heinlein succeeds because Edward White, an attorney with registered

works, filed suit solely as a proposed representative plaintiff for the putative subclass of registered attorney-authors; and Kenneth Elan, an attorney with only unregistered works, filed suit solely as a proposed representative for the putative subclass of unregistered attorney-authors. [Ex. A (White Complaint) at ¶¶ 4, 5 & 12].  As Judge Rakoff determined, and as Heinlein discussed and predicted in his Memorandum in Support of Motion for Class Certification, the plaintiffs' position in <u>White</u> was unsupportable because Elan, the proposed class representative, did not comply with § 411(a). Accordingly, the dismissal of Elan's claims was a simple and unremarkable judicial decision; whereas Westlaw's argument for dismissal in the present case is without basis because Heinlein has fulfilled § 411(a) and may pursue the copyright infringement claims of unregistered attorney-authors within the proposed class.

**IV.**    **CONCLUSION**

For the foregoing reasons, the plaintiff respectfully requests that this Court deny the defendant's motion in its entirety.


PLAINTIFF,

DAVID J. HEINLEIN


By: /s/ Jonathan M. Starble
Jonathan M. Starble [ct15825]
STARBLE & HARRIS LLC
Avon Park South
One Darling Drive
Avon, CT 06001
Telephone: (860) 678-7775
Facsimile: (860) 678-8887
Email: jstarble@starbleharris.com

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Law in Opposition to Motion to Dismiss or Transfer was filed electronically on May 25, 2012.  Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

/s/ Jonathan M. Starble